**Dated: April 7, 2020**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JEFFERY CLARK WORTHAM, | ) | Case No. 19-13349-SAH |
| | ) | Chapter 7 |
| Debtor. | ) | |
| ―――――――――――――――――― | ) | |
| | ) | |
| McPHERSON CO-OP CREDIT UNION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 20-01018 |
| | ) | |
| JEFFERY CLARK WORTHAM, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING AMENDED MOTION TO DISMISS ADVERSARY COMPLAINT,
BRIEF IN SUPPORT, AND NOTICE OF OPPORTUNITY FOR HEARING [DOC. 5]**

On February 10, 2020, plaintiff McPherson Co-op Credit Union ("Credit Union") filed its

Complaint [Doc. 1] seeking to deny debtor, Jeffery Clark Wortham ("Debtor"), his discharge

pursuant to 11 U.S.C. § 727(a)(2)(b) and (a)(4), and excepting from discharge debt arising from

three separate loans under 11 U.S.C. § 523(a)(2)(A).[1]  Debtor filed his Motion to Dismiss

Adversary Complaint, Brief in Support, and Notice of Opportunity for Hearing [Doc. 4] on

March 2, 2020, and amended to correct misstated dates on March 4, 2020 [Doc. 5] (the

"Motion").  Credit Union filed its Objection to Defendant's Amended Motion to Dismiss

Adversary Complaint [Doc. 8] on March 13, 2020.

## JURISDICTION

The Court has jurisdiction to hear this Amended Motion pursuant to 28 U.S.C. § 1334(b),

and venue is proper pursuant to 28 U.S.C. § 1409.  Reference to the Court of this matter is

proper pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28

U.S.C. § 157(b)(2)(I) and (J).

## PROCEDURAL BACKGROUND

The procedural posture of the underlying bankruptcy case and this adversary proceeding

is crucial to unwinding the various legal issues raised by the Motion.  The Court takes judicial

notice of such facts based on its own docket.[2]

1.      Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on August 14,

        2019 (the "Petition Date"), commencing Case No. 19-13349 (the "Bankruptcy Case").

2.      The deadline to file a complaint objecting to the dischargeability of a debt under Section

        523 or to Debtor's discharge under Section 727 was November 12, 2019.

---

[1]Unless otherwise noted, all further statutory references will be to the Bankruptcy Code,
United States Code Title 11.

[2]It is well established that a court may take judicial notice of its own records as well as
records of other courts, particularly in closely related cases.  Hutchinson v. Hahn, 402 F. App'x
391, 394-395 (10th Cir. 2010) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169,
1172 (10th Cir. 1979)); Cornforth v. Fidelity Investments, 2017 WL 650132 (W.D. Okla. 2017).

3.    Susan Manchester, the chapter 7 trustee in the Bankruptcy Case ("Trustee"), filed her Motion by Trustee for Additional Time within which to Object to the Discharge of Debtor(s) with Notice of Opportunity for Hearing with Brief in Support [Doc. 23 in Bankruptcy Case] on November 11, 2019 (the "Trustee Extension Motion"), pursuant to which Trustee sought an extension of time for Trustee to file a complaint objecting to Debtor's discharge under Section 727 for ninety (90) days.

4.    Trustee's request was granted, and the Order Granting Additional Time within which to Object to Discharge of Debtor(s) [Doc. 30 in Bankruptcy Case] was entered on November 26, 2019 (the "Trustee Extension Order"), providing:

> Trustee be, and she is hereby granted, an additional ninety (90) days
> from November 11, 2019, or until February 9, 2020, within which
> to object to the Debtor(s) discharge.

5.    Credit Union also sought an extension to object to Debtor's discharge.  On November 11, 2019, just after the Trustee Extension Motion was filed, it filed the Creditor McPherson Co-op Credit Union's Application for Additional Time within which to Object to the Discharge of Debtor with Notice of Opportunity for Hearing with Brief in Support [Doc. 24 in Bankruptcy Case] (the "Credit Union Extension Motion").

6.    Although no objections were filed to the Credit Union Extension Motion by the objection deadline, November 25, 2019, Credit Union failed to upload an order granting the Credit Union Extension Motion.  See Bankruptcy Case Docket generally.

7.    Nevertheless, Credit Union filed its Complaint on February 10, 2020, seeking (i) money judgment, (ii) denial of Debtor's discharge under Section 727(a)(2)(B) and (a)(4), and (iii) an exception to Debtor's discharge under Section 523(a)(2)(A).

3

8.   However, on February 11, 2020, the Court entered the Order Striking Creditor

McPherson Co-op Credit Union's Application for Additional Time within which to Object

to the Discharge of Debtor with Notice of Opportunity for Hearing with Brief in Support

[Doc. 24] as Stale and Order to Show Cause Why Counsel should not be Required to

Attend Basic Bankruptcy Seminar [Doc. 41 in Bankruptcy Case] which struck the Credit

Union Extension Motion as stale in accordance with Local Rule 9013-1.I.6.

9.   On March 2, 2020, Debtor filed its Motion arguing Credit Union's Complaint should be

dismissed because it is time-barred and fails to state a claim for relief under Federal Rule

of Civil Procedure 12(b)(6).  For the reasons explained below, this Court agrees.

### FACTUAL ALLEGATIONS FROM THE COMPLAINT

Under Rule 12(b)(6), a complaint must be construed in the light most favorable to the

plaintiff, taking as true all factual allegations and making all reasonable inferences in the plaintiff's

favor that can be drawn from the pleadings.  Casanova v. Ulibarri, 595 F.3d 1120, 1124 (10th Cir.

2010).  The Complaint alleges Debtor is indebted to Credit Union for about $161,575 plus

interest and fees as a result of three loan transactions.  After alleging the transactions and amounts

owed, the Complaint moves on to a section titled "Misrepresentations and Fraudulent Transfers."

All relevant, albeit primarily conclusory, allegations are as follows:

A.   Debtor obtained an extension, renewal or refinancing of credit by false

representation or actual fraud.  The specific false representations or fraud included,

stating his father was sick, needed open heart surgery, died on the surgery table,

was going to inherit from his father's estate, which included oil and gas revenues,

the estate was tied up in probate, he had hired a lawyer to handle the probate,

4

hired another lawyer to handle the oil and gas revenues, location of collateral, had suffered theft of personal property, Debtor was sick to an extent he had required seven cancer surgeries, his actual address, income from oil and gas revenues, size of father's estate and life insurance proceeds, failed to list stolen personal property loss on line 15 of Statement of Financial Affairs and English bulldog on Bankruptcy Schedules, failed to properly list answer for three years on Form 107, question 2 all in violation of 11 U.S.C. § 523(a)(2)(A) as well as the laws of the State of Oklahoma.

B.      Upon information and belief, it is believed Debtor may have made several transfers of interests in property to various people such as friends and significant others by purchasing expensive items such as a Polaris, Charger and Toy Hauler purchased directly or indirectly from Credit Union's extension of credit to Debtor.

C.       Debtor made such transfers within two (2) years prior to the Petition Date.

D.      Debtor intended to hinder, delay and defraud Credit Union when he made such transfers.

E.      All such transfers were made during a time when Debtor was indebted to Credit Union and other creditors.

F.      Debtor did not receive reasonably equivalent value in exchange for such transfers.

G.      When Debtor made the transfers, he was insolvent or became insolvent because of such transfers or any one or more of such transfers.

H.      When Debtor made such transfers, he intended to incur debts beyond his ability to pay as such debts were incurred, as is demonstrated by Debtor's failure to pay to

5

Credit Union and other creditors his debts as they became due for a substantial period of time predating the Petition date.

## STANDARDS GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, "a complaint must contain sufficient factual detail 'to state a claim to relief that is plausible on its face.'" Olson v. Carmack, 641 F. App'x 822, 826 (10th Cir. 2016) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when it provides sufficient factual allegations that, taken as true, allow the court to reasonably infer the defendant is liable for the alleged misconduct." Olson, 641 F. App'x at 826 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The plausibility requirement "serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." Robbins v. Oklahoma ex rel. Okla. Dep't of Human Serv., 519 F.3d 1242, 1248 (10th Cir. 2008).

Bare legal conclusions and simple recitations of the elements of a cause of action do not satisfy this standard. Twombly, 550 U.S. at 555, 568; Iqbal, 556 U.S. at 678. A court must evaluate a motion to dismiss to determine whether the complaint alleges sufficient facts supporting all of the elements necessary to establish an entitlement to relief under the claims raised. Lane v. Simon, 495 F.3d 1182, 1186 (10th Cir. 2007). As summarized by the Tenth Circuit:

> To survive dismissal under Rule 12(b)(6) for failure to state a claim, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S.

6

> 544, 570 (2007).  While factual assertions are taken as true, legal
> conclusions are not.  A plaintiff is "not required to set forth a prima
> facie case for each element, [but] is required to set forth plausible
> claims."  Khalik, 671 F.3d at 1193.  "A claim has facial plausibility
> when the [pleaded] factual content . . . allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Cook v. Baca, 512 F. App'x. 810, 821 (10th Cir. 2013).

Complaints asserting claims based on fraud must meet a heightened pleading standard.

Rule 9(b) of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy

Procedure 7009, requires that "[i]n alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake."  Specifically, the Tenth Circuit "requires a

complaint alleging fraud to set forth the time, place and contents of the false representation, the

identity of the party making the false statements and the consequences thereof."  Parrish v. Arvest

Bank, 717 F. App'x 756, 760 (10th Cir. 2017) (quoting Koch v. Koch Indus., Inc., 203 F.3d 1202,

1236 (10th Cir. 2000)).  In other words, a party alleging fraud must "set forth the who, what,

when, where and how of the alleged fraud."  Mbaku v. Bank of Am., Nat'l Ass'n, 628 F. App'x

968, 975 (10th Cir. 2015) (quoting U.S. ex. rel. Sikkenga v. Regence Bluecross Blueshield,

472 F.3d 702, 727 (10th Cir.2006)).  Credit Union has not met its burden.

## DISCUSSION

Debtor's Motion will be granted for two reasons.  First, Credit Union cannot rely on the

Trustee Extension Order to extend its filing deadline so its Complaint comes ninety-one (91) days

too late.  Second, even if Credit Union's Complaint was timely filed, it fails to plead sufficient

facts to show Credit Union is entitled to relief.

I.      **CREDIT UNION BROUGHT ITS SECTION 523(A) AND 727(A) CLAIMS NINETY-ONE DAYS LATE; ITS CLAIMS ARE, THEREFORE, TIME-BARRED.**

The Bankruptcy Code sets out clear and stringent deadlines for filing objections to a debtor's discharge or dischargeability of a debt. Rule 4004(a) requires a complaint under Section 727(a) objecting to the debtor's discharge be filed "no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Similarly, Rule 4007(c) provides "a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." The strict, 60-day time limit set forth in Rules 4004(a) and 4007(c) "may only be extended for cause, after a hearing, if a motion is made before expiration of the sixty days." Themy v. Yu (In re Themy), 6 F.3d 688, 689 (10th Cir. 1993). In this case, the deadline to either seek an exception to the discharge under Section 523(a) or object to discharge under Section 727(a) was November 12, 2019, unless extended by an order entered on a motion filed prior to such date.

Credit Union failed to obtain an order granting an extension. It filed its Credit Union Extension Motion within the 60-day deadline, but then failed to timely submit a proposed order when no objections were filed. In accordance with the Local Bankruptcy Rules, the Court struck the Credit Union Extension Motion as stale on February 11, 2020.[3] Thus, Credit Union's deadline to file a complaint pursuant to Sections 523(a) and 727(a) remained November 12, 2019. On the other hand, Trustee successfully obtained an order extending time to file an objection to discharge under Section 727(a). Having failed to obtain its own extension, Credit Union now hopes to fall within the protection of the Trustee Extension Order's extended deadline. It cannot.

---

[3]Local Rule 9013-1.L.6 provides "If an order is not uploaded within thirty (30) days of expiration of the applicable response period, the motion may be stricken by the Court."

The Trustee Extension Motion and the Trustee Extension Order extended the deadline to object to discharge for Trustee alone.  An order granting an extension under Rules 4004 and 4007 applies only to the movant unless the order states otherwise.  In re Wijewickrama, 2018 WL 2212983 (W.D. N.C. 2018) ("[A]n extension granted on a motion . . . would ordinarily benefit only the movant, but its scope and effect would depend on the terms of the extension.") (quoting Advisory Committee Note to 1983 amended to Rule 4004); Sebag v. Freeman (In re Freeman), 2013 WL 5308267 (Bankr. N.D. Tex. 2013) ("Where a motion for extension of time does not include the names of any creditor other than the movant, no other creditor can "piggy-back'" on the movant's extension of time.") (citing In re Floyd, 37 B.R. 890, 893 (Bankr. N.D. Tex. 1984)).

The reasoning of these cases is sound.  Rules 4004 and 4007 do not expressly limit extensions to the moving party; however, they do require extensions be granted "for cause." Sackett v.  Shahid (In re Shaid), 2005 WL 2456922, at *2 (Bankr. N.D. Fla. May 3, 2005). Hence, *each party* must demonstrate cause to be granted an extension.  Shahid, 2005 WL 2456922.  Even where courts have found an order granted a general extension for all creditors under Rules 4004 and 4007, it is only when "the surrounding circumstances provided notice to the court and the debtor that a general extension was requested, demonstrated that cause existed for a general extension, and the subsequent order indicated that a general extension was granted." Ellsworth Corp. v. Kneis (In re Kneis), 2009 WL 1750101 at *3 (Bankr. D. N.J. 2009) (citing Donegal Mutual Ins. Cos. v. Watkins (In re Watkins), 365 B.R. 574 (Bankr. W.D. Pa. 2007), Brady v. McAllister (In re Brady), 101 F.3d 1165 (6th Cir. 1996), and In re Demos, 57 F.3d 1037 (11th Cir. 1995)).  These circumstances are not present in this case.

9

Neither the Trustee Extension Motion nor the Trustee Extension Order are ambiguous – both plainly relate only to an extension of time for Trustee, and Trustee only, to file a complaint objecting to Debtor's discharge under Section 727(a). Kneis, 2009 WL 1750101 (citing Ichinose v. Homer National Bank, 946 F.2d 1169, 1174 (5ᵗʰ Cir. 1991)). Nothing suggested Trustee sought a general extension. In fact, the Trustee Extension Order states the opposite: "Trustee be, and *she is hereby granted*, an additional ninety (90) days from November 11, 2019, or until February 9, 2020, within which to object to the Debtor(s) discharge." Credit Union's actions suggest it was aware of this inevitable outcome; it filed its own Credit Union Extension Motion directly after Trustee filed her extension motion. Credit Union had no reason to file its own request for an extension of time had it believed the Trustee Extension Motion requested a general extension for all creditors. Credit Union clearly understood it was not an intended beneficiary of the Trustee Extension Motion or Order. Five Star Laser, Inc. v. Height (In re Height), 2011 WL 1480265 (E.D. Mich. 2011). Quite simply, Credit Union dropped the ball and failed to timely submit an order granting the Credit Union Extension Motion. Its oversight is fatal, and Credit Union has lost its opportunity to bring Section 523(a) and 727(a) claims against Debtor.[4]

Moreover, the Court agrees with Debtor's argument that, assuming Credit Union could benefit from Trustee's extension of time to file a Section 727(a) claim, Credit Union still did not timely file its Section 727(a) claims. The Trustee Extension Order granted Trustee "ninety (90)

_____

[4]Even if Credit Union were able to "piggy-back" on the Trustee Extension Order, Credit Union's Section 523(a)(2)(A) claim would remain time-barred as Trustee only sought an extension of time to file a complaint objecting to Debtor's discharge under Section 727(a). The Credit Union Extension Motion also did not request an extension for Section 523(a) claims. Consequently, Credit Union's claim under Section 523(a)(2)(A) is clearly time-barred, with the deadline for filing such claim having expired on November 12, 2019.

days from November 11, 2019, **or until February 9, 2020**," to file her complaint under Section 727(a).  Where a deadline is established as a date certain rather than a period of time, as here, Rule 9006(a)(1)(C)[5] does not apply to extend the deadline from a date certain to the next day that is not a Saturday, Sunday, or legal holiday.  In re Wright, 2019 WL 5075941 at *4 n. 10 (Bankr. N.D. Tex. 2019) (citing Smart-Fill Mgmt. Group, Inc. v. Froiland (In re Froiland), 589 B.R. 309 (Bankr. W.D. Tex. 2018); X/Open Co. Ltd. v. Gray (In re Gray), 492 B.R. 923 (Bankr. M.D. Fla. 2013)).  The advisory committee notes to the 2009 amendment to Rule 9006(a)(1)(C) make clear that its time computation provisions apply only when a time period must be computed and not when a time to act is set.  Wright, 2019 WL 5075941 at *4.  The Trustee Extension Order set a specific deadline of February 9, 2020, for filing complaints under Section 727(a); Credit Union filed its Complaint on February 10, 2020, one day too late.[6]

For the foregoing reasons, Credit Union's Complaint is time-barred and will, therefore, be dismissed without leave to amend.[7]

---

[5]Rule 9006(a)(1)(C) provides that, if the last day of a period "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."  Rule 9006(a)(1)(C), Fed. R. Bankr. P.

[6]Credit Union's first claim is for money judgment on its state law claims.  This Court's jurisdiction to liquidate a debt and enter money judgment co-exists with its jurisdiction to determine the dischargeability of such debt.  Johnson v. Riebesell (In re Riebesell), 586 F.3d 782, 793-794 (10th Cir. 2009); Manchester v. Kretchmar (In re Kretchmar), 591 B.R. 876, (Bankr. W.D. Okla. 2018).  Since it is dismissing the Section 523(a)(2)(A) claim, it will, likewise, dismiss Credit Union's claim for money judgment.  To the extent the claim needs to be liquidated, it can be liquidated in the claims allowance process.  11 U.S.C. § 502; Rules 3001 - 3008, Fed. R. Bankr. P.

[7]Dismissal of a complaint without leave to amend "is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."  Knight v. Mooring Capital Fund, LLC, 749 F.3d 1180, 1190 (10th Cir. 2014) (citing Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir.2006)).

## II.    THE COMPLAINT IS INADEQUATE AND UNINTELLIGIBLE, THEREFORE MUST ALSO BE DISMISSED FOR FAILING TO STATE A CLAIM.

Although the Court could stop its analysis and dismiss the Complaint as time-barred without any need to address the substance of the claims raised by Credit Union, the Court is compelled to address the viability of Credit Union's substantive claims as set forth in the Complaint for educational purposes.  The Complaint is problematic at best as it fails to set forth non-conclusory facts falling within the recognized elements of Credit Union's claims under Sections 523(a)(2)(A) and 727(a)(2)(B) and (a)(4)(A).  To state a claim, a complaint must state who is being sued, the specific claims being asserted, ***the specific facts supporting each claim***, and what each defendant did that violated the plaintiff's rights.  Perrian v. Coons, 2015 WL 1539022 (D. Colo. 2015) (citing Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007)).  In this respect, the Complaint utterly fails.

### A.    The Complaint Fails to State a Claim under Section 727(a)(2)(B).

To deny a debtor's discharge pursuant to Section 727(a)(2)(B), the plaintiff must establish that the debtor "'[1] transferred, [2] removed, [3] destroyed, [4] mutilated, or [5] concealed' property of the estate after the date of the petition."  Grochocinski v. Campbell (In re Campbell), 475 B.R. 622, 637 (Bankr. N.D. Ill. 2012) (citing 11 U.S.C. § 727(a)(2)).  And, the plaintiff must also establish that, in so acting, the debtor had the actual intent to defraud creditors.  Mathai v. Warren (In re Warren), 512 F.3d 1241, 1249 (10th Cir. 2008) (quoting Gullickson v. Brown (In re Brown ), 108 F.3d 1290, 1293 (10th Cir. 1997)).

Credit Union's allegations do not come close to meeting the specificity required to successfully plead a Section 727(a)(2)(B) claim which, being premised on fraud, must meet the

12

higher pleading standard of Rule 9(b).  The Complaint ignores this higher standard and fails to allege "the who, what, when, where and how of the alleged fraud." Mbaku, 628 F. App'x at 975. At a minimum, Credit Union must identify the "what," in other words, what property was allegedly transferred after the bankruptcy petition was filed.  Nevertheless, the Complaint fails to meet this basic requirement.  To show property of the bankruptcy estate was transferred or concealed, Credit Union states only that "it is believed Debtor may have made several transfers of interests in property to various people such as friends and significant others by purchasing expensive items such as a Polaris, Charger and Toy Hauler purchased directly or indirectly from Credit Union's extension of Credit to Debtor . . .  within two (2) years prior to the Petition Date." Credit Union's allegation that unspecified "expensive items" were fraudulently transferred or concealed does not approach the specificity required to plead fraud claims.  Similarly, Credit Union fails to identify to whom property of the estate was transferred, when the transfers occurred, where the transfers took place, or how the property was transferred.

By failing to contain sufficient facts to support Credit Union's claim that Debtor intentionally transferred, removed, destroyed, mutilated, or concealed property post-petition, the Complaint fails to state a claim under Section 727(a)(2)(B), and such claim must be dismissed.

**B.    The Complaint Fails to State a Claim under Section 727(a)(4)(A).**

To state a claim pursuant to Section 727(a)(4)(A), a creditor must demonstrate that the debtor knowingly and fraudulently made a false oath relating to a material fact in or in connection with the bankruptcy case.  United States Trustee v. Garland (In re Garland), 417 B.R. 805, 814 (10th Cir. BAP 2009) (citing Gullickson, at 1294); Hunt v. Steffensen (In re Steffensen), 511 B.R. 149, 160 (Bankr. D. Utah 2014).  "A 'false oath' may be either:  '(1) a false statement or

omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings.'" Garland, 417 B.R. at 814 (citing 6–27 Collier on Bankruptcy ¶ 727.04[1][c] (15th ed. rev. 2009)).

Credit Union identifies the following as Debtor's false oaths:  Debtor "failed to list stolen personal property loss on line 15 of Statement of Financial Affairs and English bull dog [sic] on Bankruptcy Schedules, failed to properly list answer for three years on Form 107, question 2." The Complaint is silent as to why these omissions are material.  By way of example, the extent of failing to report stolen personal property is not explained.  The stolen personal property is not identified in any respect and as far as the Court is concerned it could be property worth no more than a few dollars or even nothing.  Given that one of the alleged omissions was failure to list an English bulldog, the Court is skeptical as to the materiality of the alleged "false oaths" without further factual identification of the omissions.  Credit Union again neglected to explain the who, what, where, when, and how for each omission.

Accordingly, Credit Union's claim under Section 727(a)(4)(A) must also be dismissed for failing to state a claim.

**C.    The Complaint Fails to State A Claim under Section 523(a)(2)(A).**

Under Section 523(a)(2)(A), debts may be excepted from discharge if they are for money, property, or services obtained by a debtor's "false pretenses," "false representations," or "actual fraud" (other than a statement respecting the debtor's or an insider's financial condition).  Though the terms are often used interchangeably, the Supreme Court essentially recognizes two types of fraud encompassed by Section 523(a)(2)(A):  fraud involving misrepresentation and actual fraud not involving misrepresentation, such as fraudulent conveyance schemes.  Husky Int'l Elecs., Inc.

14

v. Ritz, 136 S. Ct. 1581, 1586-1588 (2016); see also Diamond v. Vickery (In re Vickery),

488 B.R. 680, 691 (10th Cir. BAP 2013) (finding "actual fraud" is an independent basis for a

claim under Section 523(a)(2)(A) and does not require a misrepresentation).

To succeed on a claim involving misrepresentation under Section 523(a)(2)(A), a creditor

must prove the following elements: (i) the debtor made a false representation; (ii) the debtor

made the representation with the intent to deceive the creditor; (iii) the creditor relied on the

representation; (iv) the creditor's reliance was justifiable; and (v) the debtor's representation

caused the creditor to sustain a loss.  Johnson v. Riebesell (In re Riebesell), 586 F.3d 782, 789

(10th Cir. 2009); Vickery, 488 B.R. at 687.  However, the Complaint's vague and conclusory

narration of potentially fraudulent acts do not demonstrate Credit Union has a plausible claim to

relief under Section 523(a)(2)(A).  While the Complaint broadly identifies the purported

misrepresentations made by Debtor to Credit Union in paragraph 17, it is utterly silent as to

when, where, and how the representations were made by Debtor.  Moreover, the Complaint is

noticeably lacking any statement that Credit Union relied on Debtor's misrepresentations, that

such reliance was justifiable, and that Credit Union suffered damages as a result of such reliance.

Similarly, Credit Union has not stated a claim for actual fraud.  Actual fraud does not

require a misrepresentation or reliance.  Rather, actual fraud occurs "when a debtor intentionally

engages in a scheme to deprive or cheat another of property or a legal right."  Vickery, 488 B.R.

at 687 (quoting In re Vitanovich, 259 B.R. 873, 877 (6th Cir. BAP 2001)).  Here, the Complaint

makes no mention of an intentional scheme by Debtor to deprive Credit Union of its property.

Consequently, Credit Union has not stated a claim under Section 523(a)(2)(a) for

misrepresentation or actual fraud.

As a "complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims," (Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original)), and this Complaint is lacking in the minimal factual particularities required to plead fraudulent misrepresentation or actual fraud, the Complaint fails to state a claim under Section 523(a)(2)(A), and such claim must be dismissed.

## CONCLUSION

Credit Union's Complaint is time-barred and inadequate. As a result, for the reasons stated above, Debtor's Motion is GRANTED for failing to state a claim upon which relief can be granted, and the Complaint is DISMISSED WITH PREJUDICE WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

#   #   #